IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SAMUEL A. WILDER, #258295, ) | Civil Action No. 3:12-364-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | **AND** |
| WAYNE MCCABE, WARDEN IN HIS ) | **REPORT AND RECOMMENDATION** |
| OFFICIAL CAPACITY AS WARDEN AT ) | |
| LIEBER CORRECTIONAL INSTITUTION, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff, Samuel A. Wilder, filed this action pro se on April 20, 2012.[1] Plaintiff appears to allege, pursuant to 42 U.S.C. § 1983 ("§ 1983"), that Defendant violated his constitutional rights. He is an inmate at the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff claims he was terminated from his prison job as a law library worker after he filed a grievance alleging racial discrimination within LCI's Education Department. On August 24, 2012, Defendant filed a motion to dismiss, or in the alternative, for summary judgment. Because Plaintiff is proceeding pro se, he was advised on August 24, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion could result in the dismissal of his complaint. Plaintiff filed a response on September 24, 2012.

---

[1]Plaintiff's pleading, which is titled "NOTICE AND MOTION FOR PRELIMINARY INJUNCTION AND/OR PROTECTIVE ORDER AND BRIEF IN SUPPORT," has been construed as both Plaintiff's Complaint (Doc. 1) and as a motion for a preliminary injunction (Doc. 8). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) and (e) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the Court.



## MOTIONS FOR PRELIMINARY INJUNCTIONS/TEMPORARY RESTRAINING ORDER

Plaintiff filed a motion for a preliminary injunction, which he amended on June 20, 2012. On July 16, 2012, he filed a motion for a temporary restraining order ("TRO"). In his original motion, Plaintiff appears to request that the Court reinstate his job in the law library, order Defendant and his agents to not retaliate against any inmate at SCDC for filing a grievance, and stop the alleged racial discrimination. In his June 20, 2012 amendment, Plaintiff requests that the Court order SCDC Officers Bouch and Weatherford to stop threatening his job as a teacher's aide, order that Defendant and his agents to not retaliate against him, and order that Defendant hire (within thirty days) an African-American worker for LCI's Education Department. Plaintiff requests, in his July 16, 2012 TRO, that the Court order Officer Bouch not come within ten feet of him and not to speak to him. Defendant denies Plaintiff's assertions, provides that he is no longer employed as Warden of LCI,[2] asserts that the allegedly retaliatory search of Plaintiff's cell is reasonably related to a legitimate penological interest, and asserts that Plaintiff lost his job as a teacher's aide because Plaintiff violated prison rules (possession of contraband). In his motion to dismiss or for summary judgment, Defendant argues that Plaintiff fails to state facts adequate to show that he will succeed on the merits of his claim, that he will suffer irreparable harm if the injunction is not granted, that the equities tip in his favor, or that the injunction is in the best interest of the public.

On September 26 and 28, Plaintiff filed motions for hearings as to retaliation. He appears to be requesting a hearing as to the issues contained in his motions for preliminary injunction/TRO. Plaintiff may also be attempting to assert claims of retaliation against persons who are not parties to

---

[2]Defendant states he left his position as Warden of LCI on August 3, 2012. Defendant's Aff. (Doc. 22-1), Para. 10.



this action and as to events which happened after Defendant left employment at LCI. The undersigned has determined that the record concerning the pending motion is adequate and there is no need for a hearing. Plaintiff's motions for hearings (Docs. 27 and 28) are, therefore, denied.

Plaintiff's original motion (Doc. 8) as amended (Doc. 11) appears to be a motion for a preliminary injunction.[3] As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. Id. at 376. Similarly, the plaintiff must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. Id. at 374–76.

Plaintiff fails to show that he is entitled to relief under the factors set out in Winter. He is unlikely to be successful in the underlying dispute as to his claims concerning his prison job or discrimination, as discussed below. In his amendment to his motion, Plaintiff appears to allege that correctional officers have verbally threatened him. Verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington

---

[3]To the extent that this is a motion pursuant to Rule 65(b) for a TRO, it is recommended that it be denied because Plaintiff has not shown specific facts which "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition." Fed. R. Civ. P. 65(b).

3



v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983). Additionally, Plaintiff requests injunctive relief as to persons who are not parties to this action. Plaintiff also fails to show that he is likely to suffer irreparable harm in the absence of preliminary relief. He appears to assert that he will suffer the irreparable harm of losing his prison job, but he has not shown that he has a protected interest in such, as discussed below. Plaintiff also fails to show that the balance of equities tips in his favor or that it is in the public interest to grant the injunction. Thus, it is recommended that Plaintiff's motion for a preliminary injunction be denied.

In his motion for a TRO, Plaintiff requests that the Court order SCDC Officer Bouch not utter a word to Plaintiff or come within ten feet of his space. It is recommended that this motion be denied. Plaintiff appears to be complaining about Officer Bouch allegedly ordering him out of a staff lunchroom and writing him up for possessing contraband. Officer Bouch is not a party to this action. Further, Plaintiff fails to show specific facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition." Fed. R. Civ. P. 65(b).

**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Plaintiff, who is African-American, appears to allege that there is discrimination in LCI's Education Department. As noted above, he appears to allege that he lost his job as a law library worker for filing a grievance concerning the alleged discrimination. Plaintiff may also be attempting to assert a claim concerning the processing of his grievance. Defendant contends that his motion to dismiss or for summary judgment should be granted because: (1) Plaintiff failed to exhaust his

4



administrative remedies as to his claims against Defendant; (2) Plaintiff fails to state a claim for a preliminary injunction against Defendant; (3) Plaintiff fails to state facts sufficient to establish a claim against Defendant for any constitutional violation; (4) Defendant is entitled to qualified immunity; and (5) the doctrine of respondeat superior is not applicable in a case brought under § 1983.

1. Standard of Review

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers



"labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

2. Exhaustion of Administrative Remedies

Defendant contends that Plaintiff's claims are barred because he failed to exhaust his available administrative remedies prior to filing this action. He argues that Plaintiff has not presented any evidence to show he exhausted his administrative remedies, and Plaintiff stated in his Complaint that he had not received final decisions concerning the grievance he filed. In his opposition memorandum, Plaintiff appears to argue that the Court should excuse exhaustion because he is allegedly being retaliated against by Officer Bouch.



"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's ("PLRA"), 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532. The Fourth Circuit, in <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." <u>Id.</u> at 683.

A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. See <u>Anderson v. XYZ Correctional Health Servs., Inc.</u>, 407 F.3d at 677, <u>see also</u> <u>Neal v. Goord</u>, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled on other grounds by <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Jackson v. Dist. of Columbia</u>, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so

long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999) (An inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Additionally, a prisoner is not responsible when he follows the proper grievance procedures and prison officials nevertheless mishandle the grievance. See Hill v. O'Brien, 387 F. App'x 396, at *3 (4th Cir. 2010) ("[W]hen prison officials prevent inmates from using the administrative process ...., the process that exists on paper becomes unavailable in reality." (quotation and citations omitted). Other Circuits have found that administrative remedies are exhausted, found that the remedy is unavailable, or excused exhaustion where prison officials have failed to timely respond. Boyd v. Corrections Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"), cert. denied, 544 U.S. 920,(2005); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing that administrative remedies are deemed exhausted under the



PLRA when prison officials fail to respond to inmate grievances); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

Plaintiff asserts that he filed a step-one grievance concerning discrimination on March 4, 2011, and a step-two grievance on March 11, 2011 concerning the alleged discrimination. He appears to assert that the step-two grievance has not been answered, he inquired of SCDC Branch Chief Ann Hallman in November 2011 concerning the matter and was told to wait, and he had not received a response to the step-two grievance as of the time of his Complaint. Defendant has provided no information as to this grievance other than to assert that Plaintiff cannot bring this action because he failed to exhaust his grievances prior to bringing this action. As to Plaintiff's March 2011 grievance concerning discrimination, more than 125 days[4] elapsed between the time Plaintiff filed

---

[4] In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), (1) an inmate must fill out a Form 10–5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; (3) the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the Warden's response by completing a Form 10–5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; (6) the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC
(continued...)

9



his Step 1 grievance (March 4, 2011) and the time he filed this action (February 8, 2012). Defendant has not asserted or presented anything to show that an extension of time to process the grievance was granted or that some other exception applies. Thus, for purposes of the motion to dismiss, there are genuine issues of material fact as to whether Defendant hindered Plaintiff's ability to exhaust his administrative remedies as to Plaintiff's allegation that Defendant discriminated against him because there were only white workers in LCI's Education Department.[5] Plaintiff, however, has not shown that he exhausted his remedies as to any other of the alleged incidents[6] and thus Defendant's motion to dismiss should be granted as to Plaintiff's remaining claims.

3. Job Claims

Plaintiff appears to allege that he was terminated from his job in violation of his constitutional rights. Defendant contends that Plaintiff fails to state a due process claim because Plaintiff does not have a constitutional right to a prison job such that the termination of such a job does not implicate a protected property interest. Additionally, Defendant contends that any equal protection claim fails because Plaintiff has not established a prima facie case of racial discrimination and has not established a genuine dispute as to whether the legitimate, nondiscriminatory reasons for

---

[4](...continued)
Policy/Procedure GA–01.12, at §§ 11, 13.1–13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. Id. at § 13.6.

[5]As Plaintiff has not provided a copy of his March 2011 grievance, it is difficult to determine what exactly was grieved. In his Complaint, however, Plaintiff only appears to allege (prior to Plaintiff having filed the March 2011 grievance) a generalized claim of discrimination based on a lack of African-American workers in the Education Department. See Doc. 1 at 1 to 3.

[6]In his Complaint, Plaintiff only asserted that he filed the March 2011 grievance. In his memorandum in opposition to Defendant's motion to dismiss or for summary judgment, Plaintiff attached a copy of a grievance concerning his termination from his law library job. He did not sign that grievance until February 13, 2012, which was after the date he filed this action.



transferring him to another job were pretextual. As discussed above, Plaintiff's job claims should be dismissed because he failed to exhaust his administrative remedies. Alternatively, Defendant's motion for summary judgment as to these claims should be granted for the reasons discussed below.

Plaintiff fails to show that his due process rights were violated as to his job termination. Prisoners have no entitlement to a job at a certain pay level, or even to any job. See Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates).

Plaintiff also fails to show that his equal protection rights were violated as to his termination from his prison job.[7] To succeed on an equal protection claim,[8] a prisoner must first show that he

---

[7]Plaintiff does not appear to have asserted a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") for discrimination, he has not alleged or shown that he has exhausted his applicable administrative remedies. See Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 137 (4th Cir. 1995)( Before a federal court may assume jurisdiction over a claim under Title VII, "a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether 'reasonable cause' exists to believe that the charge of discrimination is true."). Further, Plaintiff has not shown that Defendant can be held liable as an individual under Title VII. See Lissau v. Southern Food Serv., Inc., 159 F.3d 177 (4th Cir. 1998)(holding that supervisors are not liable in their individual capacities for Title VII violations).

[8]Racial discrimination in prisoner job assignments states a violation of the Equal Protection Clause. See Davis v. Passman, 442 U.S. 228 (1979) (finding violation of Equal Protection Clause in employment context); Henry v. Van Cleve, 469 F.2d 687 (5th Cir.1972) (finding equal protection
(continued...)

11



was treated differently from others who were similarly situated and that the unequal treatment resulted from intentional or purposeful discrimination. To meet this requirement, plaintiff is required to set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003). Once he makes this showing, the prisoner must allege facts that, if "true, would demonstrate that the disparate treatment lacks justification under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002).

Here, Plaintiff fails to set forth any specific non-conclusory factual allegations that establish an improper motive by Defendant as to Plaintiff's termination from the law library job. Defendant asserts that Plaintiff was not denied the opportunity to work in the law library due to his race. He states that Plaintiff was not terminated, but was transferred to a teacher's aide position within the education building because Plaintiff hurt his arm in late 2011 and eventually became physically unable to perform his duties in the law library (which included that the inmate be able to push library books by cart to different areas of the institution), and because he refused to perform such duties. Defendant Aff., Paras. 5-8. Plaintiff appears to argue that the reason given is pretextual because another inmate told him that the reason for his termination was changed (that a form first listed the reason for his termination as medical and refusal to perform duties was added later). He has, however, presented only inadmissible hearsay as to this assertion. Further, Plaintiff earlier claimed that he was "laid off" from his library job because of an injury to his shoulder. Doc. 1 at 3. He further admits that he received a medical pass not to lift twenty pounds in November 2011. Doc. 26 at 16. In his opposition memorandum, Plaintiff does not appear to dispute that he was unable to do

---

[8](...continued)
claim where prisoner alleged racial discrimination in application of visiting privileges).



the law library job due to his injury, but argues that Defendant should have modified the job so that he could do it. Doc. 26 at 12.[9] Additionally, although Plaintiff argues that he should have been allowed to explain why he did not show up for work or at the SMU, he does not appear to dispute that he failed to do so. Doc. 26 at 16-17.

To the extent that this action should be analyzed under the standards developed in Title VII litigation,[10] Plaintiff fails to establish a prima facie case of discrimination because he fails to show that his transfer from the law library job to the teacher's aide job was an adverse action and he fails to show that he was satisfactorily performing his job. Additionally, Defendant has provided a legitimate, non-discriminatory reason for transferring Plaintiff which he fails to show is pretextual.

4. <u>Retaliation</u>

Plaintiff asserts that he was retaliated against for filing a grievance concerning alleged discrimination in LCI's Education Department. In his Complaint, he appears to allege that there is discrimination at LCI's Education Department because all of the staff members are white. Defendant contends that Plaintiff was transferred to a new job for a legitimate, nondiscriminatory reason. As discussed above, Plaintiff's retaliation claims should be dismissed for his failure to exhaust his

---

[9] In his opposition memorandum, Plaintiff asserts for the first time that there is a white inmate worker with disabilities who now works in LCI's Education Department. He has not provided the inmate's name, nor any evidence to show that the inmate had the same restrictions for which Plaintiff was terminated or that the inmate refused to perform the tasks which Plaintiff refused to perform.

[10] Where a § 1983 claim is based upon alleged discrimination, the standards developed in Title VII litigation apply. <u>Beardsley v. Webb</u>, 30 F.3d 524, 529 (4th Cir. 1994); <u>see also</u> <u>Causey v. Balog</u>, 162 F.3d 795, 804 (4th Cir. 1998)(The elements a plaintiff must prove and the standards applied in assessing a § 1983 gender discrimination claim are the same as in the Title VII context. If a plaintiff fails to establish that defendants violated her rights under Title VII, then her similar claims under § 1983 must also fail).

13



administrative remedies. Alternatively, Defendant's motion for summary judgment should be granted for the reasons discussed below.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc)(citing Adams, 40 F.3d at 74).

Here, Plaintiff has provided nothing to support his allegations of retaliation. Plaintiff has not asserted that Defendant was the one who allegedly terminated him from his prison job or what, if any, retaliatory action Defendant took. Further, Plaintiff has not shown that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. As discussed above, Plaintiff has no constitutionally protected right as to his prison job. He also (as discussed below) has no constitutionally protected right as to the processing of his grievances.

5.  Racial Discrimination

Plaintiff appears to allege a claim for discrimination because the LCI Education Department has only white security employees, the carpentry instructor is white, the new school



principal is white, and all the inmate workers are white.[11] Defendant denies having discriminated against Plaintiff on the basis of his race.

Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated."). Here, Plaintiff has presented only conclusory allegations of discrimination.

6. Grievances

Plaintiff appears to assert that his grievance alleging discrimination was not timely or properly processed. Access to administrative remedies is not itself a constitutionally protected right. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). Further, allegations that SCDC employees are not following SCDC policies or procedures, standing alone, do not amount to constitutional violations. See Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal

---

[11]As noted above, Plaintiff failed to exhaust his administrative remedies as to any claim concerning the termination of his law library job. Even if Plaintiff has properly brought a claim concerning the termination of his teacher's aide job, he fails to assert that he has exhausted his administrative remedies as to such a claim and he fails to show that such termination was discriminatory or was in retaliation for his filing a grievance. Defendant asserts that Plaintiff was terminated for violating a prison rule by having contraband. Plaintiff was found to have a legal box with a page of social security numbers, sand papers, a bottle of white out, a typewriter, a walkman, and numerous canteen items. It was noted that Plaintiff had these items even though he has never had any money in his trust fund. He was charged with possession of contraband and trafficking/trading. Plaintiff has presented nothing to dispute this legitimate, non-discriminatory reason for his job termination.



due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

7. Respondeat Superior

Plaintiff has not made any allegations that Defendant was personally involved in the alleged incidents. He thus appears to be asserting his claims against Defendant based on a theory of respondeat superior. The doctrine of respondeat superior, however, generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982).

8. Qualified Immunity

Defendant contends that he is entitled to qualified immunity. Plaintiff has asserted in the caption of his Complaint that Defendant is sued in his official capacity as Warden at LCI. Thus, it does not appear that Plaintiff is suing Defendant in his individual capacity. Further, Plaintiff appears to assert in his opposition memorandum that he is not requesting monetary damages.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:



> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. Therefore, to the extent that Plaintiff is suing Defendant in his individual capacity for monetary damages, Defendant is entitled to qualified immunity.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's motions for hearings (Docs. 27 and 28) are **denied**. It is recommended that Plaintiff's motions for preliminary injunctions and/or TROs (Docs. 8, 11, and 17) be **denied**, and that Defendant's motion to dismiss or for summary judgment (Doc. 22) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

October 18, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).